UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DEANDRE MOORE,                      )
                                    )
            Petitioner,             )
                                    )
      v.                            )           No. 4:06CV1450 FRB
                                    )
DON ROPER,                          )
                                    )
            Respondent.             )

**MEMORANDUM AND ORDER**

This cause is before the Court on Missouri state prisoner
Deandre Moore's <u>pro</u> <u>se</u> petition for writ of habeas corpus pursuant
to 28 U.S.C. § 2254. All matters are pending before the undersigned
United States Magistrate Judge, with consent of the parties,
pursuant to 28 U.S.C. § 636(c).

On July 28, 1999, a jury in the Circuit Court of St.
Louis City, Missouri, found petitioner guilty of three counts of
Robbery First Degree, three counts of Armed Criminal Action, and one
count of Assault First Degree. (Resp. Exh. 2 at 103-09.) On
September 10, 1999, petitioner was sentenced as a prior offender to
seven concurrent terms of twenty-five years' imprisonment. (<u>Id.</u> at
118-24.) On September 19, 2000, the Missouri Court of Appeals
affirmed petitioner's judgment of conviction. <u>State v. Moore</u>, 31
S.W.3d 148 (Mo. Ct. App. 2000) (order) (per curiam). Petitioner's
Motion for Rehearing and/or Transfer to the Supreme Court was denied
on October 30, 2000. Petitioner's Application to the Supreme Court
for Transfer was denied on December 5, 2000. Mandate issued on the

- 1 -

court of appeals' opinion on December 13, 2000. Thereafter, on February 22, 2001, petitioner filed a <u>pro</u> <u>se</u> motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. (Resp. Exh. 7 at 4-9.) On June 9, 2001, appointed counsel filed an amended motion for post-conviction relief, which was denied without an evidentiary hearing. (<u>Id.</u> at 14-25, 27-33.)[1] The Missouri Court of Appeals affirmed the denial of post-conviction relief on June 27, 2006. <u>Moore v. State</u>, 196 S.W.3d 67 (Mo. Ct. App. 2006) (order) (per curiam). Mandate issued on August 10, 2006. Petitioner filed the instant petition for writ of habeas corpus on October 2, 2006.

Petitioner is currently incarcerated at the Potosi Correctional Center in Mineral Point, Missouri. In the instant petition, petitioner raises five claims for relief:

1) That he received ineffective assistance of counsel on direct appeal in that counsel failed to brief and argue on appeal the issue that the trial court erred in overruling defense counsel's objection to the State's improper closing argument;

2) That he received ineffective assistance of counsel at trial in that counsel failed to investigate and subpoena Danny Julian who would have testified to having been present during and at the time of the offense(s) and that petitioner was not present;

3) That the trial court violated petitioner's right to equal protection of law when it overruled petitioner's <u>Batson</u>[2] challenge to the prosecutor's

_____

[1]A review of the record shows the matter to have been called for hearing, but that the parties determined at that time to submit the motion on the record. No evidence was taken at the hearing. (Resp. Exh. 7 at 26.)

[2]<u>Batson v. Kentucky</u>, 476 U.S. 89 (1986).

strike of Venireman Millett;

4) That the trial court erred in its pretrial ruling on a motion in limine which permitted the State to admit evidence of petitioner's previous conviction of Robbery, thereby affecting petitioner's decision whether to testify at trial; and

5) That the trial court erred in overruling petitioner's motion to suppress identification testimony.

In response, respondent contends that the claims raised in Grounds 4 and 5 of the instant petition are procedurally barred from review by this Court inasmuch as petitioner failed to properly raise the claims in state court. Respondent further contends that the claims raised in Grounds 1, 2 and 3 are without merit and should be denied.

## I. Exhaustion Analysis

A petitioner must exhaust his state law remedies before the federal court can grant relief on the merits of his claims in a habeas petition. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). The Court must first examine whether the federal constitutional dimensions of the petitioner's claims have been fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988); see also Boerckel, 526 U.S. at 848. If not, the petitioner may still meet the exhaustion requirement if there are no currently available non-futile state remedies by which he could present his claims to the state court. Smittie, 843 F.2d at 296. When the petitioner's claims are deemed exhausted because he has no available state court remedy, the federal court still cannot reach the merits of the claims unless the petitioner

demonstrates adequate cause to excuse his state court default and actual prejudice resulting from the alleged unconstitutional error, or that a fundamental miscarriage of justice would occur if the Court were not to address the claims. Coleman v. Thompson, 501 U.S. 722 (1991); Wainwright v. Sykes, 433 U.S. 72, 87 (1977); Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir. 1995); Stokes v. Armontrout, 893 F.2d 152, 155 (8th Cir. 1989). Before reviewing any claims raised in a habeas petition, the Court may require that every ground advanced by the petitioner survive this exhaustion analysis. Rhines v. Weber, 544 U.S. 269 (2005).

A review of the record shows petitioner's claims for relief to be exhausted either because petitioner has properly raised the claims in state court or has no available non-futile state remedy by which he could now pursue his claims.

## II.  Procedural Default

In Ground 4, petitioner contends that the trial court erred in denying his pretrial motion in limine to exclude evidence of his prior conviction of Robbery.  In Ground 5, petitioner claims that the trial court erred in denying his motion to suppress identification testimony.  A review of the record shows petitioner not to have raised these claims of trial court error on direct appeal.  (Resp. Exh. 3.)

Missouri procedure requires that a claim for relief be presented at each step of the judicial process.  Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994).  Under Missouri law, claims of trial

- 4 -

court error must be raised on direct appeal. <u>Ham v. State</u>, 7 S.W.3d 433, 440 (Mo. Ct. App. 1999). Because the petitioner here failed to raise the instant claims of trial court error on direct appeal, the claims are procedurally defaulted and cannot be reviewed by this Court unless the petitioner shows cause for his default and prejudice resulting therefrom, or that a fundamental miscarriage of justice would occur if the Court were not to address the merits of the claim. <u>Coleman</u>, 501 U.S. at 750. In his Traverse (Doc. #13), petitioner contends that direct appeal counsel's failure to raise the instant claims on direct appeal constitutes cause sufficient to excuse his procedural default.

Ineffective assistance of direct appeal counsel may constitute cause for procedural default. <u>Reese v. Delo</u>, 94 F.3d 1177, 1182 (8th Cir. 1996) (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 492 (1986)). For the federal court to review such a claim as cause for default, however, the petitioner must have first presented this Sixth Amendment argument as an independent claim to the state courts if a forum existed to make the argument. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 450-53 (2000); <u>Taylor v. Bowersox</u>, 329 F.3d 963, 971 (8th Cir. 2003) (citing <u>Murray</u>, 477 U.S. at 489); <u>Charron v. Gammon</u>, 69 F.3d 851, 858 (8th Cir. 1995). Although petitioner raised a claim of ineffective assistance of direct appeal counsel during his post-conviction proceedings, that claim addressed appellate counsel's failure to raise on appeal a claim regarding the State's closing argument. (<u>See</u> Resp. Exh. 7 at 16-21; Resp. Exh. 8 at 12-17.)

- 5 -

Petitioner did not pursue an independent Sixth Amendment claim in state court relating to appellate counsel's failure to raise on appeal the *instant* claims of trial error. As such, this Court is precluded from addressing alleged counsel error as cause to excuse petitioner's procedural default of the claims now raised in Grounds 3 and 4. See <u>Williams v. Kemna</u>, 311 F.3d 895, 897 (8th Cir. 2002). Petitioner asserts no other cause to excuse his default.

Petitioner has failed to establish cause to excuse his procedural default, thus obviating the need for the Court to determine whether prejudice has been shown. <u>Cagle v. Norris</u>, 474 F.3d 1090, 1099 (8th Cir. 2007). In addition, because petitioner has failed to present new evidence of actual innocence, he has failed to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. <u>Abdi v. Hatch</u>, 450 F.3d 334, 338 (8th Cir. 2006); <u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1352-53 (8th Cir. 1997). Therefore, the Court's refusal to entertain petitioner's procedurally defaulted claims will not result in a fundamental miscarriage of justice.

Therefore, for all of the foregoing reasons, the claims raised in Grounds 4 and 5 of the instant petition are procedurally barred from federal habeas review and should be denied.

### III. Claims Addressed on the Merits

Section 2254(d)(1) requires federal habeas courts to test the determinations of state courts "only against 'clearly established Federal law, as determined by the Supreme Court of the

United States,'" and prohibits the issuance of a writ of habeas corpus "unless the state court's decision is 'contrary to, or involved an unreasonable application of,' that clearly established law." <u>Williams v. Taylor</u>, 529 U.S. 362, 379 (2000).  The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court.  <u>Id.</u> at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. <u>Williams</u>, 529 U.S. at 412-13; <u>Carter v. Kemna</u>, 255 F.3d 589, 591 (8th Cir. 2001).  A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. <u>Carter</u>, 255 F.3d at 592 (citing <u>Williams</u>, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 410-11).

A.    <u>Ground 3 – Batson Challenge</u>

In his third claim for relief, petitioner claims that the State exercised one of its peremptory challenges in a racially discriminatory manner, in violation of <u>Batson v. Kentucky</u>, 476 U.S. 89 (1986), and that the trial court erred by overruling petitioner's <u>Batson</u> challenge.  Petitioner raised this claim on direct appeal,

and, upon review of the merits of the claim, the Missouri Court of Appeals denied relief. (Resp. Exh. 6.)

At the time petitioner's conviction became final, the law was clearly established that the Equal Protection Clause of the United States Constitution forbids the prosecution from using its peremptory challenges to strike potential jurors "solely on account of their race." Batson v. Kentucky, 476 U.S. 79, 89 (1986). Batson dictates a three-step analysis: First, the defendant must make a prima facie showing that the prosecution has used its peremptory challenges to strike a potential juror because of race. Once the defendant has made such a showing, the prosecution bears the burden of coming forward with a race-neutral explanation for challenging the juror in question. Finally, the trial court must determine whether the defendant met his burden of proving purposeful discrimination. Hernandez v. New York, 500 U.S. 352, 358-59 (1991) (citing Batson, 476 U.S. at 96-98). In addition to bearing the ultimate burden of persuasion, under Missouri law the defendant also bears the burden of proving pretext once a race-neutral explanation has been offered. State v. Parker, 836 S.W.2d 930, 939 (Mo. banc 1992).[3] "The trial court's decision on the ultimate question of

---

[3]Batson does not itself require the defendant to demonstrate pretext in the State's strikes. Indeed, the Batson Court expressly declined "to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges." Batson, 476 U.S. at 99. Instead, the Court explained that "[i]n light of the variety of jury selection practices followed in our state and federal trial courts, we make no attempt to instruct these courts how best to implement our holding today." Id. This language of Batson "requires reviewing

discriminatory intent represents a finding of fact of the sort accorded great deference on appeal[.]" Hernandez, 500 U.S. at 364 (citing Batson, 476 U.S. at 98 n.21); see also Gibson v. Bowersox, 78 F.3d 372, 374 (8th Cir. 1996) (citing Jones, 938 F.2d at 841; Elem v. Purkett, 64 F.3d 1195, 1199 (8th Cir. 1995). Factual findings of the state court are presumed to be correct unless petitioner shows otherwise by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court's factual findings on the issue of discriminatory intent largely turn on evaluation of credibility. Hernandez, 500 U.S. at 365. "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed." Id. "[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" Id. (quoting Wainwright v. Witt, 469 U.S. 412, 428 (1985)).

A review of the record here shows that during jury selection, the State exercised a peremptory challenge to strike Venireman Norman Millett, an African-American member of the venire panel. In response to petitioner's challenge to this strike, the prosecutor explained that Mr. Millett had relatives in jail whom he visits, and that such a characteristic is indicative of a person who

---

federal courts to respect state court procedures for treating Batson challenges." Jones v. Jones, 938 F.2d 838, 844 (8th Cir. 1991).

would not be good juror for the State. The prosecutor also explained that Mr. Millett had no prior jury experience, and that such prior experience is an indicator of a good juror. The prosecutor finally explained that Mr. Millett "absolutely refused" to answer her questions regarding his opinion as to whether his relatives were treated fairly in their convictions, which led the prosecutor to believe that Mr. Millett thought his relatives were not treated fairly and refused to share this opinion with the prosecutor. (Resp. Exh. 6, Memo. at 3.) Petitioner argued to the trial court that such explanations were pretext inasmuch as Venireman Lawrence, a white male, was not struck even though he had no jury experience and had a son who was convicted of a crime. (Id.) Petitioner also argued that, although Mr. Millett's manner in which he responded regarding his opinion of fairness was "somewhat odd," he believed Mr. Millett's response to reflect his lack of knowledge regarding the circumstances of his relatives' convictions. (Resp. Exh. 1 at 175-76.) The trial court determined the State's reason to be race-neutral, and it denied petitioner's Batson challenge. (Id. at 176.)

On direct appeal, the Missouri Court of Appeals applied the standard as set forth in Batson and its progeny and affirmed the trial court's findings, noting specifically that while Venireman Lawrence was similar to Mr. Millett in that he had not previously served on a jury and his son had been convicted of a crime, "a review of the record indicates that the State's voir dire of

- 10 -

venireperson Millett regarding his relatives was very different from that of venireperson Lawrence, who gave straightforward answers about his son's conviction." (Resp. Exh. 6, Memo. at 3.) The court then elaborated upon the relevant voir dire questioning of Mr. Millett:

> When the State questioned venireperson Millett about whether or not his relatives had been treated fairly by police, the following exchange occurred:
>
> MS. DARST (PROSECUTOR): Were they treated fairly by the police?
>
> VENIREPERSON MILLETT: I don't know. I can't say.
>
> MS. DARST: What do you think?
>
> VENIREPERSON MILLETT: I can't give my opinion.
>
> MS. DARST: It's your opinion. It's the right one.
>
> VENIREPERSON MILLETT: No.
>
> THE COURT: Answer the question, sir.
>
> VENIREPERSON MILLETT: I'd rather not answer it, sir.
>
> THE COURT: All right, come up here, sir.
>
> [The following proceedings took place at the bench outside the hearing of the jury.]
>
> THE COURT: Mr. Millett, you have to answer the question.
>
> VENIREPERSON MILLETT: Okay, at the time I wasn't there and so I really can't say. This was just what I got from what he said because I didn't go to the trial.

THE COURT:  Any follow-up?

MS. DARST:  But sir, you said you had an opinion.  What's your opinion about?

VENIREPERSON MILLETT:  I can't say how they was treated because they was convicted.

MS. DARST:  But you said you had an opinion. What's your opinion?

VENIREPERSON MILLETT:  I felt if they were convicted then I had to go along with the system.  I go along with that.

. . .

MS. DARST: Do you feel they were treated fairly by the criminal justice system, the courts?  Do you feel like these guys were treated fairly?

VENIREPERSON MILLETT:  They was treated alright.

MS. DARST:  Were they incarcerated, or were they given probation?

VENIREPERSON MILLETT:  No, no.  I can't say that.  They did jail time.

MS. DARST:  Did you visit them in jail?

VENIREPERSON MILLETT:  Yes.

MS. DARST:  Anything about that you think might make it difficult for you to return a verdict of guilty in this case?

VENIREPERSON MILLETT:  No.

MS. DARST:  You feel like you'd be able to put aside the things about your relatives and judge the evidence in this case?

VENIREPERSON MILLETT:  I'm not impressed, no.

MS. DARST:  You're not impressed?

VENIREPERSON MILLETT: It don't have no effect

on me, whatever went -- whatever came out, it
wouldn't have no effect on me.

MS. DARST: You understand you won't be a
witness to what happened? You didn't see what
happened in these cases, you understand that?

VENIREPERSON MILLETT: It won't have no effect
on me.

MS. DARST: Will you be able to reach a
verdict based upon what people tell you in
this case?

VENIREPERSON MILLETT: I think I will. Yes,
I will.

(Id. at 3-5.)

The court of appeals determined that the trial court was in the best
position to determine whether the State's concerns regarding Mr.
Millett were well-founded, inasmuch as the trial court witnessed Mr.
Millett's tone and demeanor during voir dire. (Id. at 5.) The
court of appeals thus affirmed the trial court's ruling on
petitioner's Batson challenge. (Id. at 6.)

The court's factual finding that the State's articulated
reason for its strike was race-neutral and not pretextual was not
an unreasonable determination of the facts in light of the evidence
presented in the state court proceedings. See Purkett v. Elem, 514
U.S. 765, 769 (1995); Gibson, 78 F.3d at 374; Jones, 938 F.2d at 843
(state appellate court's findings of fact presumed to be correct).
Indeed, the distinguishing nature of Mr. Millett's manner in
responding to the prosecutor's questions was recognized by
petitioner's counsel as well, who noted it to be "somewhat odd."

- 13 -

(Resp. Exh. 1 at 175.) Given Mr. Millett's demeanor during this questioning, it cannot be said that the prosecutor's reason for her strike of Mr. Millett on account of his recalcitrance in responding to reasonable questions was either implausible or constituted a "fantastic justification" for the strike. <u>Cf.</u> <u>Purkett</u>, 514 U.S. at 768. As such, petitioner has failed to overcome the presumption of correctness accorded to the state court's conclusion that the prosecutor did not act with discriminatory intent in her strike of Mr. Millett. <u>See</u> <u>Boyd v. Groose</u>, 4 F.3d 669, 672 (8th Cir. 1993).

Based on the above, the state court's decision denying petitioner relief is well based on law and fact. This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has petitioner demonstrated such. Therefore, it cannot be said that the state court's adjudication of the instant claim "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Accordingly, the claim raised in Ground 3 of the instant petition should be denied. 28 U.S.C. § 2254(d).

B.     <u>Ground 2 – Assistance of Trial Counsel</u>

In Ground 2 of the instant petition, petitioner claims

that he received ineffective assistance of trial counsel in that counsel failed to investigate and subpoena Danny Julian, who would have testified that he was present during the commission of the offenses of which petitioner was convicted and that petitioner was not present during the crimes. Petitioner raised this claim in his motion for post-conviction relief and on appeal of the denial of the motion. Upon review of the merits of the claim, the Missouri Court of Appeals denied petitioner relief. (Resp. Exh. 10.)

At the time petitioner's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense. Id. at 687. In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Indeed, a strong presumption exists that counsel's conduct "might be considered sound trial strategy." Strickland, 466 U.S. at 689 (internal quotation marks and citation omitted). Decisions relating to trial strategy are "virtually unchallengeable." Id. at 690. To establish prejudice, the petitioner "must show that there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

On post-conviction appeal, the Missouri Court of Appeals summarized the relevant facts underlying the criminal cause of action as follows:

> Mr. Burnett ("Victim") testified that while he was getting gas for his car Movant approached him requesting cigarettes. As he was bent over his car to retrieve the cigarettes Movant pulled out a gun and said "give me all that shit." Movant shot him. Victim, then, began running and Movant chased him. Victim saw a police officer and a security guard and stopped running. He then asked Movant "[Y]ou're gonna [sic] kill me for my shit? . . . You take these rings, man." Victim then gave Movant three rings. The police officer and security guard then apprehended Movant. Victim later identified Movant as his attacker through police photographs and a line-up. Victim was also able to identify Danny Julian who was with Movant at the time of the robbery. Danny Julian identified Movant as the gunman at his guilty plea hearing.

(Resp. Exh. 10, Memo. at 4.)[4]

Further review of the trial transcript also shows that Farand Washington testified that while he was discarding trash from his car at a mini-mart, petitioner approached him with an automatic weapon, ordered Mr. Washington to "give me that shit" upon which Mr.

---

[4]Inasmuch as petitioner does not rebut these factual findings by clear and convincing evidence, they are presumed to be correct. 28 U.S.C. § 2254(e)(1).

Washington took off his watch and bracelet and threw it on the ground, and then ordered Mr. Washington to direct his companion to exit the car. Mr. Washington further testified that when his companion exited the vehicle, the petitioner got in the car and drove away from the mini-mart. Mr. Washington testified that he subsequently identified petitioner in a photographic array as well as at a live lineup as the perpetrator of the crime. (Resp. Exh. 1 at 253-82.) Terrance Butler also testified at trial that while he was using a pay telephone at an Amoco station, petitioner and another person, later identified as Danny Julian, approached him and his car which was parked on the Amoco lot. Mr. Butler testified that petitioner rode up on a bicycle while Julian walked up to Mr. Butler with an automatic weapon and demanded, "Give me all your shit." Mr. Butler testified that he gave Julian his money and pager and emptied his pockets, after which petitioner got into Mr. Butler's car and drove away, and Julian rode away on the bicycle. Mr. Butler testified that he subsequently identified petitioner from a photographic array and at a live lineup as the person who stole his vehicle. Mr. Butler further testified that he identified both petitioner and Danny Julian in a subsequent live lineup as the perpetrators of the crime. (Id. at 288-316.) A fingerprint found on Mr. Butler's recovered vehicle was positively identified as that of petitioner. (Id. at 317-28.)

In reviewing petitioner's claim of ineffective assistance of trial counsel for counsel's failure to investigate and subpoena

Danny Julian to testify at trial, the court of appeals noted that Julian had pled guilty to the robbery of Mr. Burnett, and identified petitioner at his guilty plea hearing as the gunman involved in that robbery. (Resp. Exh. 10, Memo. at 4, 5.) In light of Julian's testimony given at his guilty plea hearing implicating the petitioner, the court of appeals determined that petitioner's trial counsel exercised sound trial strategy by not calling Julian as a witness at petitioner's trial. (Id. at 5.)

The determination whether to call certain witnesses is a decision left to counsel as a matter of trial strategy. Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001) (decisions relating to witness selection are normally left to counsel's judgment); cf. United States v. Washington, 198 F.3d 721, 723-24 (8th Cir. 1999) (strategic decisions left to counsel include all trial decisions other than the decision to plead guilty, waiving a jury trial, testifying on one's own behalf, and taking an appeal). In the circumstances of this case, as determined by the post-conviction motion court and the Missouri Court of Appeals, it was reasonable for counsel as a matter of trial strategy not to call Danny Julian because of his testimony given at his guilty plea hearing identifying petitioner as the gunman involved in the Burnett robbery. Nevertheless, if counsel had indeed called Julian to testify at petitioner's trial and Julian testified that petitioner was not present during the perpetration of the crimes, it cannot be said that with the other ample physical evidence, including

- 18 -

fingerprint evidence and eyewitness identification and testimony, a reasonable juror would not have found petitioner guilty of the offenses alleged. <u>See</u> <u>Battle v. Delo</u>, 19 F.3d 1547, 1553 (8th Cir. 1994). As such, even if counsel's conduct in failing to call Julian as a witness was deficient, petitioner cannot demonstrate that the result of the proceeding would have been different had the alleged deficiency not occurred. <u>Hanes</u>, 240 F.3d at 699 (no prejudice where allegations of ineffective assistance of counsel had no effect on the central evidence against petitioner); <u>Mansfield v. Dormire</u>, 202 F.3d 1018, 1023 (8th Cir. 2000) (petitioner unable to show prejudice by counsel's failure to present certain evidence given that the State's case against him was not weak); <u>Reed v. Norris</u>, 195 F.3d 1004, 1006 (8th Cir. 1999) (unnecessary to discuss reasonableness of counsel's conduct inasmuch as overwhelming evidence of guilt would render it "impossible" for petitioner to demonstrate prejudice).

In its opinion, the Missouri Court of Appeals set out the <u>Strickland</u> standard for ineffective assistance of counsel and found counsel's challenged conduct relating to his failure to call Danny Julian as a witness at petitioner's trial to constitute sound trial strategy, and thus not to rise to the level of ineffective assistance. This decision was well based on law and fact and was not "contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has petitioner shown that the court's determination "resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

As such, the claim raised in Ground 2 of the instant petition should be denied. 28 U.S.C. § 2254(d).

C.    Ground 1 - Assistance of Direct Appeal Counsel

In Ground 1 of the instant petition, petitioner claims that he received ineffective assistance of counsel on direct appeal in that counsel failed to brief and argue a claim that the trial court erred in overruling defense counsel's objection to the State's improper closing argument, and specifically, that portion of the argument in which the prosecutor stated, "And, Ladies and Gentlemen, if you want to return a verdict of not guilty and come back and tell Mr. Burnett that you just don't believe him --." Petitioner raised this claim of ineffective assistance of counsel in his motion for post-conviction relief and on appeal of the denial of the motion. Upon review of the merits of the claim, the Missouri Court of Appeals denied petitioner relief. (Resp. Exh. 10.)

At the time petitioner's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel, including effective assistance on direct appeal. Strickland, 466 U.S. at 686; Evitts v. Lucey, 469 U.S. 387, 396-97 (1985). When evaluating claims of ineffective assistance of direct appeal counsel, the Court must apply the Strickland standard of review.

Pfau v. Ault, 409 F.3d 933, 939 (8th Cir. 2005). As such, petitioner must show that counsel's representation fell below an "objective standard of reasonableness" and that petitioner was prejudiced as a result. Strickland, 466 U.S. at 687-88, 694. To demonstrate prejudice on account of counsel's failure to raise a claim on appeal, petitioner must show a "reasonable probability that an appeal of [the] issue would have been successful and that the result of the appeal would thereby have been different." Pryor v. Norris, 103 F.3d 710, 714 (8th Cir. 1997); see also Pfau, 409 F.3d at 939-40 (petitioner must show that but for appellate counsel's error, he would have prevailed on appeal).

In reviewing petitioner's claim of ineffective assistance of direct appeal counsel for counsel's failure to raise a claim of trial court error in overruling an objection made during the State's closing argument, the court of appeals examined the underlying claim and determined the prosecutor's challenged comment not to have had a decisive effect on the outcome of the trial, and thus that appellate counsel was not ineffective in failing to raise this non-meritorious issue on appeal. In addition to the "overwhelming evidence of Movant's guilt" (Resp. Exh. 10, Memo. at 4), the court of appeals noted the record to show

> that the prosecutor's statement during closing
> argument was in response to defense counsel's
> assertion that [Mr. Burnett] was not credible.
> During defense counsel's closing argument,
> counsel contended that [Mr. Burnett] was
> coming from a "cocktail lounge," [] could not

> give specific details about his surroundings
> that evening, and he testified that the
> security guard and police officer were on
> foot.FN2 [FN2-The security guard testified
> that they had arrived to the robbery location
> by car.]

(Id.)

The court of appeals went on to state that had direct appeal counsel pursued the claim as asserted by the petitioner, it "would not have reversed and remanded Movant's convictions based upon [the prosecutor's challenged] comment[.]" (Id. at 4-5.)

Counsel cannot be said to be ineffective in failing to pursue a matter upon which there is no reasonable likelihood of success. See Smith v. Armontrout, 888 F.2d 530, 545 (8th Cir. 1989) (counsel not ineffective in failing to pursue a matter upon which there is no reasonable likelihood of success); see also Burton v. Dormire, 295 F.3d 839, 846 (8th Cir. 2002) (cannot fault counsel for failing to raise issue if no relief could possibly have been obtained); Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998) (no prejudice from counsel's failure to pursue non-meritorious issue); Grubbs v. Delo, 948 F.2d 1459, 1464 (8th Cir. 1991); Meyer v. Sargent, 854 F.2d 1110, 1115-16 (8th Cir. 1988). As such, the decision of the state court that counsel's failure to raise a non-meritorious issue on direct appeal did not constitute ineffective assistance was neither contrary to nor an unreasonable application of clearly established federal law. Nor has petitioner shown that the court's determination "resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

As such, the claim raised in Ground 1 of the instant petition should be denied.  28 U.S.C. § 2254(d).

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that petitioner Deandre Moore's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. #1) is dismissed without further proceedings.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue in this cause inasmuch as petitioner has failed to make a substantial showing that he has been denied a constitutional right.

_Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE

Dated this  _16th_  day of March, 2010.